# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL PETWAY,** | * |
| Plaintiff, | * |
| v. | * Civil No. 12-3731 PJM |
| **DOYLE PRINTING & OFFSET CO., INC.** | * |
| Defendant. | * |

## MEMORANDUM OPINION

Michael Petway has sued his former employer, Doyle Printing & Offset Company, Inc., ("Doyle") for racially discriminatory conduct in violation of Title VII of the Civil Rights Act and Title 20 of the State Government Article of the Maryland Code. Doyle has filed a Motion to Dismiss (Paper No. 26) the Complaint. For the reasons that follow, Doyle's Motion to Dismiss (Paper No. 26) is **GRANTED**.

## I.

According to the Amended Complaint (Paper No. 25):

Petway was employed by Doyle from 1985 until he was terminated on November 2, 2009. He had been previously discharged in early 2005, but was reinstated later that year after an arbitrator ruled that the termination was improper. Prior to 2005, Petway rarely received disciplinary write-ups or complaints regarding his job performance. After he was reinstated in October 2005, however, Petway was the subject of numerous disciplinary investigations and received what he believes were unjustified reprimands for alleged insubordination. This prompted Petway to file several grievances. The subject of his grievances, as set forth in the Amended Complaint, was that African-American employees at Doyle were often subjected to

– 1 –

standards and treatment different from their white counterparts. For example, unlike white employees, African-American employees were required to check in during their deliveries, were disciplined or terminated for failing to make routine deliveries, and were not granted leave as frequently. Petway also recalls an incident where an "African-American employee was late from a delivery and his Foreman, Michael Doyle, pulled a shotgun on him and asked him if he could dance."

Petway's employment was officially terminated on November 2, 2009, after he began investigating a complaint filed by another African-American employee.[1] He alleges that he was told that he was fired for being insubordinate, but his termination papers stated that he resigned. On that same day, Petway filed an unfair labor charge with the National Labor Relations Board (NLRB). Shortly thereafter, pursuant to the collective bargaining agreement between Doyle and Petway's union, a Joint Standing Committee affirmed his termination. The NLRB deferred to the arbitration award of the Committee. Petway's motion for reconsideration to the NLRB was denied on October 25, 2010.

Petway maintains that Doyle continued to discriminate against him even after he was terminated, *i.e.*, from November 2009 through October 2010, by "denying him documents and information that he was entitled to and by refusing to reinstate him."[2] On July 19, 2011, Petway filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); on July 17, 2012, he received his "right to sue notice," in which the EEOC stated

---

[1] In his Amended Complaint, Petway states that he was terminated in retaliation for investigating his co-worker's complaint. In his motion papers, he argues that his termination was the direct result of a hostile work environment. The Court will assume for present purposes that he is suing both for retaliation and direct discrimination. Some of the Amended Complaint seems to suggest a disparate impact claim with respect to African-Americans, but the language is too spotty to establish this and, in any event, neither party argues this.

[2] Petway concedes that he was subjected to racial discrimination before, during, and after the Joint Standing Committee hearing in November 2009.

that, after conducting an investigation, it was unable to reach a conclusion on the alleged violations.[3]

On October 17, 2012, Petway sued Doyle for employment discrimination in the Circuit Court for Prince George's County. Doyle removed the case to this Court pursuant to 28 U.S.C. § 1331. Doyle has moved the Court to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction (failure to exhaust administrative remedies) and failure to state a claim upon which relief can be granted (statute of limitations), respectively.

## II.

The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment" to help determine whether it has jurisdiction over the case before it. *Evans v. B.F. Perkins Co., a Division of Standex Int' Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006). To survive a 12(b)(6) motion a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] Doyle attached a copy of the EEOC letter in his first Motion to Dismiss [Paper No. 12] as Exhibit 1. Petway argues that this transforms the motion to dismiss into one for summary judgment; he is incorrect because the EEOC letter is referenced in the Amended Complaint. *See Biospherics, Inc. v. Forbes, Inc., et al.*, 989 F. Supp. 748, 749–50 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998) (holding an exception to general rule that evidentiary exhibits transform a motion to summary judgment is made for documents which are referred to in complaint and upon which plaintiff relies in bringing action) (Chasanow, J.).

*v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

### III.

The Amended Complaint proceeds in two counts: Count I is for violation of Title VII of the Civil Rights Act of 1964, and Count II is for violation of Title 20 of the State Government Article of Maryland's Annotated Code.

Petway asserts, as to both Counts I and II, three grounds on which Doyle allegedly discriminated against him: (1) a hostile work environment; (2) discriminatory termination; and (3) post-employment retaliation. As the Court now explains, with respect to Count I, Grounds 1 and 2 are time-barred and Ground 3 goes out for failure to exhaust administrative remedies. All Grounds of Count II are also time-barred.

#### A. Count I: Title VII Claims

#### 1. Statute of Limitations

Although Petway sought relief with the EEOC with respect to Grounds 1 and 2 of Count I, *viz.*, hostile work environment and discriminatory termination, his EEOC claim was untimely and his claim is thus time-barred in this Court.

"Filing a *timely* charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (emphasis added) (footnote omitted). Thus, when the plaintiff files an administrative charge but "fails to file [it] in a timely fashion with the EEOC, the claim is time-barred in federal court." *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994). In the present case, Petway's claims to the EEOC had to be made within 300 days "after the alleged

unlawful employment practice occurred." *See* § 2000e–5(e)(1). Petway was terminated from his employment and the last day he could have been subjected to a hostile work environment was November 2, 2009. But he did not file his EEOC charge until July 19, 2011, well over 300 days thereafter. Thus, any claim on these grounds is time-barred. Petway gives no reason that would justify equitable relief and the Court on its own sees none.

The Court **GRANTS** Doyle's Motion to Dismiss Count I, as to Grounds 1 and 2.

### 2. Lack of Subject-Matter Jurisdiction

In Count I, Ground 3, Petway contends that he was subjected to post-employment retaliation by being denied documents he feels he was entitled to and by reason of Doyle's failure to rehire him. The Court concludes that it lacks subject matter jurisdiction to hear these claims because of Petway's failure to exhaust his administrative remedies.

It is well-settled that a plaintiff must exhaust his administrative remedies before filing a lawsuit under Title VII. *See, e.g., Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 (4th Cir. 2005). "[F]ailure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir.2009) (citation omitted). A person seeking to bring suit in federal court must first file an administrative charge with the EEOC, and his claims are limited to those alleged in his EEOC charge form. *See* 29 U.S.C. § 626(d); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996).

A claim will be barred if "the administrative charge alleges one type of discrimination -- such as discriminatory failure to promote -- and the claim [in court] encompasses another type -- such as discrimination in pay and benefits." *Chacko*, 429 F.3d at 506 (citing *Evans*, 80 F.3d at 963–64); *see also Lawson v. Burlington Indus., Inc*., 683 F.2d 862, 863-64 (4th Cir. 1982) (claim of discriminatory failure to rehire barred because charge only alleged illegal layoff). Similarly, the allegation of a discrete act in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct. *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156-57 (4th Cir. 1995). In his EEOC case, Petway alleged only that he was discriminated against on the basis of: (1) his termination, and (2) his treatment as African-American as opposed to the way in which his white counterparts were treated. The allegation of post-employment retaliation that appears in the Amended Complaint is a different theory of discrimination different from the allegations Petway made before the EEOC. There, Petway did not mention post-employment retaliation nor did he check the "continuing violation" or "retaliation" box in his EEOC charge form. *See Jones*, 551 F.3d at 301 (holding that the plaintiff had failed to exhaust her administrative remedies with regard to her "age," "sex," or "race" claims because she left those boxes unchecked and only checked the "retaliation" box on her EEOC charge).

Accordingly, Petway has not exhausted his EEOC remedies on the grounds of post-employment retaliation. *See King v. Seaboard Coast Line Railroad*, 538 F.2d 581, 583 (4th Cir. 1976); *Hicks v. Baltimore Gas & Electric Co*., 829 F. Supp. 791, 794 (D. Md. 1992).

The Court **GRANTS** Doyle's Motion to Dismiss Count I as to Ground 3 based on lack of subject-matter jurisdiction.

### 3. Continuing Violation Theory

Petway attempts to merge Grounds 1, 2, and 3 of Count I into a single claim by alleging that he was subjected to a "continuing violation." The Court is not persuaded. The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, i.e., when the incidents make up part of a continuous hostile work environment claim. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 118 (2002). However, invoking "continuing violation" is not "a talismanic or shibboleth term automatically relieving a claimant of any obligation to comply with the statutory time requirement for the filing of a charge with the EEOC under Title VII." *Hill v. AT & T Technologies, Inc.,* 731 F.2d 175, 179–180 (4th Cir. 1984).

"Given . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Morgan*, 536 U.S. at 118 (2002). In such cases, for an EEOC charge to be timely, the plaintiff can file within 300 days of any act that is part of the hostile work environment. *Id.* On the other hand, instances of discrete acts of discrimination such as termination, failure to promote, and failure to hire, are clearly discriminatory the moment they occur. *Id.* at 102. Thus, each individual event is considered separately and each individual event starts the statute of limitations anew for a particular claim of discrimination. *Id.* (holding that discrete acts of discrimination "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."); *see also Williams v Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (holding that the continuing violation theory does not apply to discrete acts and cannot save untimely claims, even if they are part of a broader pattern or practice of discrimination). In view of this, the post-employment retaliation and discriminatory termination Petway alleges in Count I of the Amended Complaint cannot be considered part of a continuing violation of Petway's

hostile work environment claim. *See, e.g., Chacko*, 429 F.3d at 511 ("[The alleged] discrete acts of discrimination, failure to promote and retaliatory demotion, . . . are clearly not allegations of a hostile work environment."). The Court's decision to dismiss all three Grounds of Count I remains unaffected.

**B. Count II: Maryland Code Claims**

Petway's state law claims in Count II also go out on the basis of limitations, hence lack of subject-matter jurisdiction.

Title 20 of the State Government Article establishes a cause of action for employment discrimination independent of federal law, and relies on its own statute of limitations for the filing of administrative claims before proceeding to court. *See* Md. Code Ann., State Gov't § 20-1013(a)(1). In Maryland, the limitations deadline is even shorter than that established for Title VII claims, as a plaintiff has only 6 months from the incident of alleged discrimination to file a charge with the Maryland Commission on Human Relations or its federal or local counterpart. Md. Code Ann., State Gov't § 20-1004(c)(2). But, as indicated, Petway waited from November 2009 until July 2011, some 17 months, to file his administrative claims. Those claims, therefore, fall well outside the applicable statute of limitations with respect to time for filing with the Maryland agency, without any compelling reasons present to grant equitable tolling.

Indeed, Petway's state law claim based on Grounds 1 and 2 of Count II would be barred by Maryland's two-year statute of limitations for filing suit even if his administrative filing had been timely. Section 20-1013 of the State Government Article provides that a "complainant may bring a civil action against the respondent alleging an unlawful employment practice, if . . . (c) the civil action is filed within 2 years after the alleged unlawful employment practice occurred."

Petway was terminated on November 2009, but his present suit was not filed until nearly three years later, on October 17, 2012.

The Court lacks subject matter jurisdiction to hear Petway's state claims with respect to Count II, Ground 3 because, as previously explained, he has not exhausted his administrative remedies. *See King*, 538 F.2d at 583; *Hicks,* 829 F. Supp. at 794.

The Court **GRANTS** Doyle's Motion to Dismiss Count II.

### IV.

For the foregoing reasons, the Court **GRANTS** Doyle's Motion to Dismiss (Paper No. 26) in its entirety and the case will be **DISMISSED WITH PREJUDICE**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 15, 2013**